San Juan Dock Co., Petitioner and Appellee, *v.* Rafael Sancho Bonet, Treasurer of Puerto Rico, Respondent and Appellee.

No. 7012. Argued November 17, 1936.—Decided July 24, 1937.

90

*B. Fernández García* and *Luis Janer* (*Benjamin J. Horton* on the brief) for appellant. *Orlando J. Antonsanti* for appellee.

MR. JUSTICE WOLF delivered the opinion of the Court.

The petitioner and appellee filed a suit in mandamus to compel the Treasurer to issue a receipt for taxes for the second half of 1933–34. The District Court of San Juan in its judgment so ordered. The parties have filed a stipulation of the facts, most of which we proceed to copy:

"Both parties appear before this court and through their attorneys stipulate that the following facts are those which have occurred in this case:

"1. That on or about the 19th of September, 1932, the San Juan Dock Co. Inc. drew a check No. 99 which was certified in favor of the Treasurer of Puerto Rico and against the Banco Territorial y Agrícola in the sum of five hundred ninety-four dollars and sixty-

six cents ($594.66) to pay the property taxes of the petitioner owing for the first semester of 1932–33, receipt number 448.

"That the said check was received (on the 19th or 23rd of September, 1932. The petitioner alleges that it was the 19th of September and the respondent that it was the 23rd of the same month) by Juan Betancourt, the official in charge of the Financial Affairs of the Treasury Department, who told Mr. Portocarrero (the employee of the petitioner who delivered said check) that the receipt for the first semester of property taxes or receipt number 448 was not yet ready and for that reason was not issued.

"3. That said check number 99 was in the hands of Mr. Betancourt from the date of its delivery (19th or 23rd of September, 1932) until the 3rd of October, 1932, within which time the Treasurer did not present the same for collection.

"4. That the Treasurer of Puerto Rico did not cash that check because he believed that the taxes were not yet collectible (*impuestos*) as the receipts were not ready.

"5. That during the time when the said check was within the hands of Mr. Betancourt the Banco Territorial y Agrícola of Puerto Rico, on the 29th day of September, 1932, closed its doors and was placed under judicial administration by the District Court of San Juan.

"6. That on the 3rd day of October, the Treasury Department, by a letter signed J. E. Rosario, returned said check number 99 to the petitioner which letter is attached as Exhibit A and forms part of this stipulation.

"7. That from the date of the letter above mentioned, various letters have crossed between the parties relating to this affair, which letters are attached to and form part of this stipulation as follows: From Exhibit A to Exhibit N consecutively.

"8. That when the time had matured for paying the taxes for the second semester of the fiscal year 1932–33, receipt number 448, second semester, or in the month of April, the petitioner by a letter sent a certified check number 142 for five hundred fifteen dollars and thirty-six cents ($515.36) to the Collector of Corporations of the Treasury Department and paid said taxes. That said check was received and its import recovered in April, 1933, and placed in a special deposit, but the receipt certifying the payment was not issued, the Treasurer saying that he would not apply it (the payment) until the receipt for the previous semester was satisfied.

"9. That when the term was ended in which to pay the taxes for the first semester of the fiscal year 1933–34, receipt 498, the petitioner

delivered a certified check for the sum of four hundred sixty-six dollars and eighty cents ($466.80) to the Collector of Corporations above mentioned to pay said taxes for which he issued receipt number 498.'' (In passing this Court draws attention to the fact that of the four payments made by the San Juan Dock Co. this was the only one received by the Treasurer as issued and for which a receipt was delivered as requested by the taxpayer.)

''10. That when the term had ended for paying property taxes for the second semester of the financial year 1933-34, receipt 498, the petitioner delivered a certified check to the Collector of Corporations in the sum of $471.47 to pay said taxes. That this check was accompanied by a letter wherein the object for which it was being drawn was stated (see Exhibit L). That in spite of having received and cashed said check the Treasurer did not apply it to the payment which the petitioner indicated, but contrary to its instructions, told the petitioner by a letter (Exhibit M) that he had attached this check and applied it to the payment of other receipts that are recited in Exhibit M.

''11. That the Treasurer collected said check in the sum of $471.47 in April, 1934, and applied it jointly with the amount of check number 142 for $515.36 which was held in a special deposit, on the 7th of May, 1934, to answer for part of the taxes (as the Treasurer alleged) the petitioner owed The People of Puerto Rico. (Exhibit M.)

''12. That by a letter of August 9, 1934 (Exhibit N), the petitioner returned the receipt 448, first semester of 1932-33, and 448, second semester 1932-33.''

Thus it appears that on the 12th day of January, 1934, the San Juan Dock Co. issued to the Treasurer a certified check for taxes *ad valorem* to cover the second semester of 1933-34 in the sum of $471.47, for which the District Court of San Juan ordered a receipt to be issued. By letter the said check was specifically made to cover the payment of $471.47 for the second semester of 1933-34. The Treasurer accepted the said certified check but refused to issue receipt number 498, attached the amount of said check and along with the special deposit for the second half of the year 1932-33, applied or attempted to apply them to the taxes for the first and second semesters of 1932-33.

The defense of the Treasurer in not accepting the check as issued or imputed by the taxpayer for the second half of 1933–34, was that he, the Treasurer had attached the amount of $970.38 to cover the taxes for the first and second semesters of 1932. Now as it did appear that the Treasurer accepted without complaint or protest of any kind the check for the first semester of 1933–34, it would appear that he could and, as we think, should likewise independently accept the check for the amount due for the second semester of 1933–34.

■ Immediately, let us say that if the Treasurer had accepted the taxes for the first half of 1932–33, apparently no question would have arisen. However, on the 10th or 23rd day of September, 1932, the Treasurer or rather his agent Betancourt, received the said check, number 99, of the petitioner to cover the first half of 1932–33. The check, as we have seen, was drawn on the Banco Territorial y Agrícola. Mr. Betancourt, the supposed agent of the Treasurer, testified that he refused to issue the receipt because the certificates or receipts for the first half of 1932–33, as so frequently happens, were not ready. The said certified check, number 99, remained in possession of Mr. Betancourt, the supposed Treasurer's agent (as we find that he actually was) until October 3, 1932. On September 29, 1932, the said Banco Territorial y Agrícola failed. The Treasurer returned the check in question to the petitioner on October 3, 1932.

We have no question that the taxes for the first half of 1932–33 were due and payable on the 1st day of July, 1932. Taxes are imposed for the fiscal year. They were so in this case, namely, from July 1932 to July 1933. We think this is self-evident. The fact that the Treasurer was not ready to issue a formal receipt, prevents, as we know, a penalty from arising but a taxpayer has a right to pay his taxes. What the Treasurer said was perhaps an excuse but not a reason.

The most serious question before us is whether the certified check was a payment. We find nothing in the Puerto Rican Acts forbidding taxes to be paid by certified checks. We all know that it is the custom or practice of the Treasurer of Puerto Rico to accept the same when issued. If he is not prepared to consider the check as payment, he should so indicate to the taxpayer presenting it. The Treasurer in this case, through its agent, Mr. Betancourt, did accept the same and hence was bound to present it for payment. The excuse for not issuing the receipt immediately, might or might not have been a good one, but it did not relieve, in our opinion, the Treasurer from presenting the check for payment within a reasonable time. We are aware of the jurisprudence, and even some statutes, in other places where nothing but cash is received as a payment, but these cases do not apply to Puerto Rico nor to the conditions which arose in this case.

Among other things, the Uniform Act on Negotiable Instruments enacts that checks must be presented within a reasonable time and the authorities tend to hold that the time under the conditions that this check was withheld is not a reasonable time.

The Treasurer maintains that the Uniform Negotiable Instrument Act is not applicable, as taxes are not debts. In the first place, where certified checks are interposed and accepted, a similar contract would arise as in the case of any other check and the same rule applies.

Futhermore, we are of the opinion that taxes in Puerto Rico are debts due and owing by a taxpayer which the law requires him to pay without any request therefor.

Although the matter was not discussed by the court below we incline strongly to the opinion that a taxpayer, although he owes back taxes has a right to single out a particular tax on which to impute payment and hence directly or ultimately obtain a receipt for that tax. One of the most striking cases is where a man takes a lease of land and prom-

ises to pay future taxes. In order not to forfeit his lease he would be bound to pay them and evidently such a lessee would have nothing to do with the back taxes.

■ There is some doubt raised as to whether the remedy by mandamus is a proper one. Once the fact of payment was established by proof and its legality unquestioned, the duty of the Treasurer to issue a receipt was clearly fixed by law and ministerial. We are sure that the recourse to payment under protest, if applicable at all, was not exclusive of the remedy chosen.

The judgment should be affirmed.

Mr. Chief Justice Del Toro and Mr. Justice Córdova Dávila took no part in the decision of this case.